JONATHAN C. MERRILL *versus* WILLIAM GORE & *als.*

In the construction of a contract, the situation of the parties, the acts to be performed under it, and the time, place and manner may be considered, to ascertain the intention of the parties; and that construction should be adopted, which would carry such intention into effect, though a single clause alone would lead to a different construction.

Thus, where the plaintiff agreed to procure for the defendant a ship frame, " the timber to be of good quality and hewn to the moulds in a workmanlike manner, and to the acceptance of a master builder appointed by defendants, and at the expense of the plaintiff, the defendants paying $16 per ton, of 40 feet measured, to be surveyed by a sworn or competent surveyor; and the timber was accepted by the master builder, but a portion of it was condemned as refuse by the surveyor at the place of delivery; *it was held*, that if the master builder decided honestly upon the quality of the timber, his decision would be conclusive.

ASSUMPSIT upon an account and written contract. The contract declared on was to furnish a ship frame for the defendants, and among other things, it provided that the timber should be of good quality and hewn to the moulds in a workmanlike manner, and to the acceptance of such master carpenter as the said defendants might select to superintend the building said ship, or the hewing and moulding said timber, the said master carpenter's service to be paid for by the plaintiff; which was to be delivered in Freeport, as soon in the spring of 1848 as boats could pass through the Cumberland and Oxford canal. The defendants agreed to pay the plaintiff $16 per ton, of 40 feet measured, to be surveyed by a sworn or competent surveyor."

At the trial, before WELLS, J., the contract showed, by an indorsement upon it, that *John Maxwell* of Freeport, was agreed upon to superintend the moulding of the timber. And the plaintiff showed that said *Maxwell* was a master carpenter; that he superintended the hewing and moulding of the timber in the woods in Fryeburg, where it was cut, and selected the most of it while standing, and also superintended the building of the ship for which the timber was furnished.

The defendants proved, that when the timber was surveyed at the place of delivery in Freeport, a portion of it was de-

Merrill *v.* Gore.

fective and was surveyed as refuse timber; and they contended they were liable to receive and pay for timber of good quality only; that the moulding of the timber only was to be to the satisfaction of *Maxwell;* and that he was not agreed upon by the parties to determine upon the quality. And there was evidence that the word " survey," in the language of shipwrights and dealers in all kinds of lumber, means a determination of the quality of the lumber as well as of the quantity.

The Judge instructed the jury, that the true construction of the contract was, that *Maxwell* was agreed upon by the parties to determine upon the quality of the timber, and that if *Maxwell* decided to receive it under the contract, the defendants were bound by his decision, notwithstanding a portion of it should prove to be defective, or should be pronounced refuse timber by the sworn surveyor. And the Judge further said, that if *Maxwell* in pursuance of the contract, with notice from the parties, and intending to act under it, did decide upon the quality of the timber, his determination would be conclusive, if honestly made, notwithstanding some of it should prove defective, when it arrived at Freeport. But if he was not notified by either party that he was to decide under the contract, and if he had had no knowledge of the contract, the parties would not be bound by his decision, nor by any thing he did in the woods.

The jury returned a verdict for the plaintiff for the full amount of the timber, and defendants excepted to the instructions.

*Shepley* and *Dana,* for defendants, contended: —

1. That by the contract, *Maxwell* was selected only to superintend " the moulding of the timber." The decision upon the " quality" of the timber was not referred to him by the parties.

2. The survey, which is a determination of the " quality" as well as the quantity, was by the terms of the contract, to be made " by a sworn or competent surveyor."

*W. P. Fessenden,* for plaintiff.

SHEPLEY, J. — The plaintiff made a written contract with the defendants to furnish timber for the frame of a ship.

It was contended in defence, that part of the timber furnished was of a bad quality and was rejected as refuse by a sworn surveyor. There was a memorandum indorsed upon the contract, that John Maxwell had been selected to superintend the moulding of the timber. The case is presented on exceptions taken to the instructions given to the jury.

They were instructed, " that the true construction of the contract was, that Maxwell was agreed upon by the parties to decide upon the quality of the timber, and that if Maxwell decided to receive it under the contract, the defendants were bound by his decision, notwithstanding a portion of it should prove to be defective or should be pronounced to be refuse timber by the sworn surveyor."

The effect of this language would appear to be, to make the presiding Judge instruct the jury, that the contract determined, that Maxwell was agreed upon by the parties, to decide upon the quality of the timber. Yet it is obvious, that he could not have been so understood by the jury, for by a subsequent clause of the instruction, they were called upon to determine, whether Maxwell, " in pursuance of the contract, with notice from the parties and intending to act under the contract, did decide upon the quality of the timber."

To ascertain the true construction of a written contract, the situation of the parties, the acts to be performed under it, and the time, place, and manner of performance may be considered. The intention of the parties is to be ascertained by an examination of the whole instrument and of its effect upon any proposed construction, and such a construction should be adopted as will carry that intention into effect, although a single clause alone considered would lead to a different construction. The contract in this case shows, that the timber was to be cut and hewn, in conformity to certain moulds, at a distance from its place of delivery. That it was expected to be transported through the Cumberland and Oxford Canal to Portland, and from thence shipped to the place of delivery. It was

to be delivered in the spring of 1848, as soon as boats could pass through that canal. There was to be a master-builder or competent person present, when the timber was cut and shaped to inspect it and to ascertain, that it was shaped in a workmanlike manner to the moulds. If the quality of the timber was not also to be determined by him at that place, the plaintiff, after having worked it according to the moulds to his acceptance, might be subjected to the loss of all that labour, and to the loss of the cost of transportation to the place of delivery, and might there find himself unable to fulfill his contract in season. It would be difficult to conclude, that the parties understood, that such might be the effect of their contract, and, that it was their intention, that the plaintiff should be subjected to such loss and damage on account of his own want of good judgment, respecting the quality of the timber, when it had been formed to the moulds of that ship, under the eye and to the acceptance of a master carpenter, selected by the defendants, who might well be supposed to be more competent to judge of the quality of timber suitable for a ship, than the plaintiff or any common sworn surveyor of lumber could be. A literal and grammatical construction of the clause might determine, that the plaintiff agreed absolutely, that the timber should be of a good quality, and that the master carpenter should only determine, whether it was hewn to the moulds in a workmanlike manner. The clause is, "The timber to be of good quality and hewn to the moulds in a workmanlike manner, and to the acceptance of such master carpenter as the said Gore & Holbrook and Isaac F. Goodrich, may select to superintend the building of said ship, or the hewing and moulding of said timber." By a transposition of the language it may be all used and yet clearly exhibit the construction adopted at the trial. The timber to be hewn to the moulds in a workmanlike manner and of good quality and to the acceptance of such master carpenter.

It is insisted, that this could not have been the intention of the parties, because the contract provided, that the timber should be surveyed after delivery by a sworn or competent

surveyor ; and that such survey, legally and practically determines the quality as well as the quantity of the article surveyed. While this is true, it is also true, that the parties may provide for and call a survey after the quality has been determined in some other mode. The language used in the contract provid- . ing for such a survey, appears to have been introduced rather to ascertain the quantity and thereby the amount to be paid by the defendants at " $16 per ton, of 40 feet measured, to be surveyed by a sworn or competent surveyor."

The contract was evidently drawn by an unskillful hand and the language is so arranged as to leave the intention of the parties somewhat obscure or doubtful. Yet taking into consideration the circumstances as before named and the effect of a different construction, the conclusion is, that the construction adopted at the trial, cannot be regarded as an erroneous one.

The case states, that Maxwell testified, that he never saw the contract before the timber was cut and moulded, and was not requested by either party to act under it, and that he did not understand, by what he did in the woods, that he was determining upon the quality of the timber under the contract. The case also states, that there was no opposing testimony. Yet it is obvious, that the jury, under the instructions given, must have found that he was notified and did act under the contract. They might perhaps have inferred it from the facts, that his name was indorsed upon the contract as the person selected for that purpose, and that he was found at the place and performing the duties required by it. However this may be, there does not appear to have been any just cause to complain of the instructions upon this part of the case.

*Exceptions overruled.*